# Order

**Michigan Supreme Court**
**Lansing, Michigan**

July 6, 2017

154936

*In re*:

GREGG P. IDDINGS, JUDGE
LENAWEE COUNTY PROBATE COURT

BEFORE THE JUDICIAL TENURE COMMISSION
_____/

SC:  154936
Formal Complaint Nos.
2016-022112;
2016-022247

Stephen J. Markman,
Chief Justice

Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder,
Justices

On December 12, 2016, the Judicial Tenure Commission issued a Decision and Recommendation to which the respondent, Honorable Gregg P. Iddings, Lenawee County Probate Court Judge, consented.  It was accompanied by a settlement agreement, in which the respondent waived his rights, stipulated to findings of fact and conclusions of law, and consented to a sanction of a public censure and a 60-day suspension without pay.  On February 3, 2017, this Court entered an order remanding the matter to the Commission for further explication, retaining jurisdiction.  The Commission filed a supplemental report under seal on February 28, 2017.  The respondent filed a motion to expand the record on May 12, 2017.  On June 5, 2017, this Court entered an order under seal granting the motion to expand the record, and rejecting the order of discipline recommended by the Commission as being insufficient, given the facts stated in the stipulation and supplemental report.  The order provided that the Court would impose a six-month suspension without pay on July 5, 2017, unless, pursuant to MCR 9.225, the respondent withdrew his consent to discipline by July 3, 2017.  The respondent has not withdrawn his consent.

In resolving this matter, we are mindful of the standards set forth in *In re Brown*, 461 Mich 1291, 1292-1293 (2000):

Everything else being equal:

(1) misconduct that is part of a pattern or practice is more serious than an isolated instance of misconduct;

(2) misconduct on the bench is usually more serious than the same misconduct off the bench;

(3) misconduct that is prejudicial to the actual administration of justice is more serious than misconduct that is prejudicial only to the appearance of propriety;

(4) misconduct that does not implicate the actual administration of justice, or its appearance of impropriety, is less serious than misconduct that does;

(5) misconduct that occurs spontaneously is less serious than misconduct that is premeditated or deliberated;

(6) misconduct that undermines the ability of the justice system to discover the truth of what occurred in a legal controversy, or to reach the most just result in such a case, is more serious than misconduct that merely delays such discovery; [and]

(7) misconduct that involves the unequal application of justice on the basis of such considerations as race, color, ethnic background, gender, or religion [is] more serious than breaches of justice that do not disparage the integrity of the system on the basis of a class of citizenship.

In the present case, those standards are being applied in the context of the following stipulated findings of fact of the Judicial Tenure Commission, which, following our de novo review, we adopt as our own:

1. Ms. [*****][1] was Respondent's judicial secretary from July 2010 to November 2015.

2. Between 2012 and 2015, Respondent engaged in a series of acts that constituted sexual harassment of Ms. [*****].

3. Respondent's conduct included,

a. Sending after-hour[s] text messages to Ms. [*****], in which he discussed his marital problems and his personal feelings.

b. Making an offer to purchase expensive items for Ms. [*****] as Christmas gifts and inviting her to Rhianna/Eminem and other high-priced concerts.

c. Suggesting that Ms. [*****] accompany him to exotic locations for court-related conferences where they could share a hotel room.

d. Showing Ms. [*****] a sexually suggestive YouTube video of a high-priced lingerie website, Agent Provacateur.

---

[1] The victim's name is redacted to protect her privacy.

e. Making comments which he admits Ms. [*****] could have reasonably interpreted as an invitation to have an affair with him.

f. In a letter of recommendation, while referring to Ms. [*****]'s professionalism and dependability, writing "besides, she is sexy as hell." Respondent deleted the language at the request of Ms. [*****].

g. Writing "Seduce [*****]" on the court computerized calendar and then directing Ms. [*****] to look at that particular date on the calendar. Respondent deleted the language at the request of Ms. [*****].

h. Telling Ms. [*****] that the outfits she wore to work were "too sexy."

i. Telling Ms. [*****] that she "owed him" for allowing her to leave work early to attend her son's after-school activities.

j. Reaching over her to edit documents which would have put him in physical contact with Ms. [*****].

k. Staring down the front of Ms. [*****]'s blouse.

l. While discussing his [t]riathlon training, sitting on Ms. [*****]'s desk and laying on it while she was sitting at her desk.

4. Shortly after she was hired, Ms. [*****] made it clear to Respondent that she had "no sexual attraction towards him."

5. On several occasions, Ms. [*****] told Respondent that his wife would not appreciate his comments and actions.

6. On several occasions, Respondent told Ms. [*****] that he was "sorry and should stop" making some of the comments.

7. Ms. [*****] was very upset when she learned about a rumor at the courthouse that she was having an affair with Respondent and requested that he "shut it down."

8. His court officer told Respondent to "watch" how he spoke to Ms. [*****].

9. Respondent admitted that he had received a written copy of the county's policy prohibiting harassment shortly after taking the bench.

10. Respondent admitted that he is well aware of, and familiar with, both Michigan and [f]ederal sexual harassment laws.

11. On March 18, 2016, Ms. [****] filed an EEO [Equal Employment Opportunity] complaint against Respondent in which she alleged that Respondent's harassment caused "an enormous amount of stress, anxiety, discomfort, nervousness, mental breakdowns, mood swings and disruptive sleep."

12. Lenawee County hired Priscilla Archangel, Ph.D., President, Archangel and Associates, LLC[,] to conduct an investigation of the EEO complaint. Ms. Archangel filed a report of the investigation dated May 2, 2016.

13. The summary findings of the report included that Respondent's behavior toward Ms. [*****],

> does constitute "harassment" in the context of "Sexual harassment includes: . . . unwanted sexual advances . . . visual conduct that includes . . . a display of sexually suggestive objects or pictures, . . . verbal conduct such as making or using derogatory comments based on sex or sexual comments, . . . verbal sexual advances or propositions; . . . suggestive/obscene letters, . . ." as listed in the Lenawee County Statement Prohibiting Harassment. Specifically, he admits showing [*****] a video by Agent Provacateur depicting scantily clad women in lingerie; writing "Besides, she's sexy as hell" in a reference letter; writing "seduce [*****]" on his electronic calendar and showing it to her; and telling her "you owe me one" when she took vacation time to attend events for her son.

14. The report also stated that it was the "belief of the Investigator that [Respondent's behavior] constituted, at a minimum, an offensive, and more probably a hostile working environment."

15. On June 20, 2016, Ms. [*****] signed a "Resignation Agreement and Release of All Claims" between herself and Lenawee County, Lenawee County Probate Court, and Respondent which provided that Ms. [*****] [would] receive monetary compensation to release all claims related to Respondent['s] conduct.

16. Respondent self-reported the EEO complaint to the Judicial Tenure Commission. On May 5, 2016, the Judicial Tenure Commission received RFI 2016-22112 from Respondent. Respondent attached his prepared statement and Ms. [*****]'s EEO complaint.

17. Respondent is extremely remorseful over these matters, he has co-operated throughout the investigation, and he is desirous of resolving these grievances.

The standards set forth in *Brown* are also being applied to the Judicial Tenure Commission's legal conclusions, to which the respondent stipulated and which we adopt as our own. The Commission concludes, and we agree, that the respondent's conduct constitutes:

(a) Misconduct in office, as defined by the Michigan Constitution of 1963, as amended, Article 6, Section 30, and MCR 9.205;

(b) Conduct clearly prejudicial to the administration of justice, as defined by the Michigan Constitution of 1963, as amended, Article 6, Section 30, and MCR 9.205;

(c) Failure to establish, maintain, enforce and personally observe high standards of conduct so that the integrity and independence of the judiciary may be preserved, contrary to the Code of Judicial Conduct, Canon 1;

(d) Irresponsible or improper conduct which erodes public confidence in the judiciary, in violation of the Code of Judicial Conduct, Canon 2A;

(e) Conduct involving impropriety and the appearance of impropriety, in violation of the Code of Judicial Conduct, Canon 2A;

(f) Failure to respect and observe the law and to conduct himself at all times in a manner which would enhance the public's confidence in the integrity and impartiality of the judiciary, contrary to the Code of Judicial Conduct, Canon 2B;

(g) Conduct which exposes the legal profession or the courts to obloquy, contempt, censure, or reproach, in violation of MCR 9.104(2);

(h) Lack of personal responsibility for his own behavior and for the proper conduct and administration of the court in which he presides, contrary to MCR 9.205(A); and

(i) Conduct that violates the standards or rules of professional responsibility adopted by the Supreme Court, contrary to MCR 9.104(4).

Applying these criteria to the present case, while mindful of the agreement between the Commission and the respondent, we have concluded that the recommended public censure and 60-day suspension without pay is insufficient in light of the stipulated facts and supplemental report. Certain of the *Brown* standards are particularly relevant here: a pattern or practice of misconduct is more serious than an isolated instance of misconduct, misconduct prejudicial to the actual administration of justice is more serious than misconduct that is prejudicial only to the appearance of propriety, misconduct implicating the actual administration of justice is more serious than conduct that does not, and deliberate misconduct is more serious than spontaneous misconduct. Here, the respondent, as found by the Commission, engaged in a course of conduct constituting sexual harassment from 2012 to 2015. Although his misconduct occurred while off the bench, it was serious and related to his administrative duties as a judge. The respondent's misconduct created an offensive and hostile work environment that directly affected the job performance of his judicial secretary in her dealings with the public and the court's business and affected the administration of justice. His actions implicated the appearance of impropriety and had a negative impact on the actual administration of justice. Further, his conduct was deliberate.

For the reasons set forth in this order, we ORDER that the Honorable Gregg P. Iddings be publicly censured and suspended without pay from the performance of his

judicial duties for a period of six months, effective July 5, 2017. This order further stands as our public censure.

In addition, we observe that the recommendation of the Commission is premised in part on the respondent's acceptance of three additional provisions, which have been agreed upon by the Commission and the respondent. These are not encompassed within our order, because they are not judicial discipline as described in Const 1963, art 6, § 30(2). The respondent has provided proof of fulfilling one of the provisions. In accordance with the rules governing judicial discipline, the Commission may recommend further discipline if the respondent fails to comply with the remaining terms:

(1) the respondent shall continue counseling with his current therapist for one year at his own expense.

(2) the respondent will provide proof of his completion of the counseling to the Commission.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 6, 2017



a0706

Clerk